IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:08-CV-547-D(3)

DELORIS D. BRAME,                    )
    Plaintiff,                      )
                                     )
        v.                       )
                                     )        **MEMORANDUM &**
                                     )        **RECOMMENDATION**
MICHAEL J. ASTRUE,                   )
Commissioner of Social Security,     )
    Defendant.                      )
                                     )

This matter is before the Court upon the parties' cross Motions for Judgment on the Pleadings. (DE's 17-18, 22-23). The time for the parties to file any responses or replies has expired. Accordingly, the matter is now ripe for adjudication. Pursuant to 28 U.S.C. 636(b)(1), this matter is before the undersigned for the entry of a Memorandum and Recommendation. (DE-24). The underlying action seeks judicial review of the final decision by Defendant denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). For the following reasons, it is HEREBY RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-17) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-22) be GRANTED, and that the final decision by Defendant be AFFIRMED.

## Statement of the Case

Plaintiff filed an application for DIB on October 14, 2005, alleging that she has been disabled since October 15, 2003 (Tr. 12). This application was denied initially and upon

1

reconsideration. (Tr. 12). A hearing was held before an Administrative Law Judge ("ALJ") on April 17, 2008. (Tr. 12). Ultimately, the ALJ found that Plaintiff was not disabled in a decision dated May 29, 2008. (Tr. 12-21). The Social Security Administration's Office of Hearings and Appeals ("Appeals Council") denied Plaintiff's request for review on August 28, 2008, rendering the ALJ's determination as Defendant's final decision. (Tr. 3-6). Plaintiff filed the instant action on March 17, 2008. (DE-4).

## Standard of Review

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...
> Id.

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.1966). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility

2

determinations, or substitute [its] judgment for that of the Secretary." Craig, 76 F.3d at 589.

Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff

was not disabled is "supported by substantial evidence and whether the correct law was

applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990).

## Analysis

The Social Security Administration has promulgated the following regulations which

establish a sequential evaluation process which must be followed to determine whether a

claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant
> engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b).
> If not, the analysis continues to determine whether, based upon the
> medical evidence, the claimant has a severe impairment. 20 C.F.R. §
> 404.1520(c). If the claimed impairment is sufficiently severe, the third
> step considers whether the claimant has an impairment that equals or
> exceeds in severity one or more of the impairments listed in Appendix
> I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404,
> subpart P, App.I. If so the claimant is disabled. If not, the next inquiry
> considers if the impairment prevents the claimant from returning to past
> work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer
> is in the affirmative, the final consideration looks to whether the
> impairment precludes the claimant from performing other work. 20
> C.F.R. § 404.1520(f).
> Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the five-step evaluation. First, the ALJ found

that Plaintiff is no longer engaged in substantial gainful employment. (Tr. 14). At step two,

the ALJ found that Plaintiff suffered from the following severe impairments: 1) carpal tunnel

syndrome; 2) arthralgias; 3) diverticulosis; 4) hypertension; 5) an affective disorder; and 6)

3

alcohol abuse. (Tr. 14). In completing step three, however, the ALJ determined that Plaintiff did not have an impairment or combination or impairments which met or medically equaled one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 14). The ALJ then determined that Plaintiff retained the residual functional capacity ("RFC") to perform medium, unskilled work with manipulative and environmental limitations. (Tr. 16). Based on this finding, the ALJ determined that Plaintiff was not able to perform her past relevant work as a fast food worker/cashier. (Tr. 19-20). However, at step five the ALJ found that there were jobs that Plaintiff could perform and that these jobs existed in significant numbers in the national economy. (Tr. 20-21). Accordingly, the ALJ determined that Plaintiff was not under a disability at any time through the date of his decision. (Tr. 21). In making these determinations the ALJ cited substantial evidence, a summary of which now follows.

Melissa Johnson, an outpatient therapist, completed a "medical assessment of ability to do work-related activities (mental)." (Tr. 114-116). According to Ms. Johnson, Plaintiff had good or fair ability to: 1) follow work rules; 2) relate to co-workers; 3) deal with the public; 4) use judgment with the public; 5) interact with supervisors; 6) deal with work stresses; 7) function independently; and 8) maintain attention and concentration. (Tr. 114). However, Ms. Johnson also indicated that Plaintiff "struggles to deal with many different stressors at once . . . [s]he often becomes overwhelmed and frustrated." (Tr. 114). In addition, Ms. Johnson opined that Plaintiff had fair ability to understand, remember and carry out complex and/or detailed instructions. (Tr. 115). Morever, Ms. Johnson indicated that Plaintiff had an unlimited ability to understand, remember and carry out simple job

4

instructions. (Tr. 115). Again, Ms. Johnson clarified these ratings by noting that Plaintiff "may become overwhelmed by may instructions at once . . . [w]hen overwhelmed, her thoughts often become disorganized." (Tr. 115). Furthermore, Ms. Johnson stated that Plaintiff had good to fair ability to: 1) maintain her personal appearance; 2) behave in an emotionally stable manner; 3) relate predictably in social situations; and 4) demonstrate reliability. (Tr. 115). She also indicated that Plaintiff was capable of managing benefits in her own best interest. (Tr. 116). Despite these findings, Ms. Johnson also noted that Plaintiff "suffers from anxiety and depression making stability and predictability difficult." (Tr. 115).

Plaintiff's mental RFC was evaluated by Dr. Giuliana Gage on June 15, 2006. (Tr. 117-134). Dr. Gage stated that Plaintiff was not significantly limited in her ability to: 1) remember locations and work-like procedures; 2) understand and remember very short and simple instructions; 3) carry out very short and simple instructions; 4) perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances; 5) sustain an ordinary routine without special supervision; 6) work in coordination with or proximity to others without being distracted by them; 7) make simple work related decisions; 8) interact appropriately with the general public; 9) ask simple questions or request assistance; 10) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; 11) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; 12) be aware of normal hazards and take appropriate precautions; and 13) travel in unfamiliar places or use public transportation. (Tr. 117-118). Likewise, Dr. Gage determined that Plaintiff was only moderately limited in her ability to:

5

1) understand and remember detailed instructions; 2) carry out detailed instructions; 3) maintain attention and concentration for extended periods; 4) complete a workday and workweek without interruptions from psychological based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; 5) accept instructions and respond appropriately to criticism from supervisors; 6) respond appropriately to changes in the work setting; and 7) set realistic goals or make plans independently of others. (Tr. 117-118). Next, Dr. Gage opined that Plaintiff was capable of: 1) understanding and following short and simple instructions; 2) maintaining concentration and pace for at least two hours to complete simple tasks; 3) adapting to changes involved in completing simple tasks; and 4) completing simple, routine, repetitive tasks. (Tr. 119). Based on these findings, Dr. Gage determined that Plaintiff was moderately limited with regard to maintaining : 1) social functioning; and 2) concentration, persistence or pace. (Tr. 131). However, Dr. Gage indicated that Plaintiff had only mild restrictions with regard to activities of daily living. (Tr. 131). Similarly, Dr. Gage stated that Plaintiff had not had any episodes of decompensation of extended duration. (Tr. 131). Finally, Dr. Gage concluded that Plaintiff was able to take care of her personal needs and manage her finances. (Tr. 133).

Another evaluation of Plaintiff's mental RFC was conducted on January 18, 2006. During this evaluation it was determined that Plaintiff was moderately limited with regard to her ability to: 1) understand and remember detailed instructions; 2) carry out detailed instructions; 3) maintain attention and concentration for extended periods; 4) perform activities within a schedule, maintain regular attendance, and be punctual within customary

6

tolerances; 5) work in coordination with or proximity to others without being distracted by them; 6) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; 7) interact appropriately with the general public; 8) accept instructions and respond appropriately to criticisms from supervisors; 9) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; 10) respond appropriately to changes in the work setting; and 11) set realistic goals or make plans independently of others. (Tr. 135-136). Moreover, it was also determined that Plaintiff was not significantly limited with regard to her ability to: 1) remember locations and work-like procedures; 2) understand and remember very short and simple instructions; 3) carry out very short and simple instructions; 4) sustain an ordinary routine without special supervision; 5) ask simple questions or request assistance; 6) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; 7) be aware of normal hazards and take appropriate precautions; and 8) travel in unfamiliar places or use public transportation. (Tr. 135-136). The evaluating physician stated that Plaintiff had the ability to: 1) understand and remember very short and simple instructions; 2) maintain concentration and attention for an adequate period of time to complete very short and simple instructions; 3) interact and relate to others appropriately in a work setting that does not require extensive public contact; and 4) adapt to stress and changes in a work environment that is not highly production oriented. (Tr. 138). Based on these findings, the evaluating physician determined that Plaintiff was moderately limited with regard to maintaining : 1) social functioning; and 2) concentration,

7

persistence or pace. (Tr. 149). However, it was also noted that Plaintiff had only mild restrictions with regard to activities of daily living. (Tr. 149).

Dr. Margaret Parrish conducted an evaluation of Plaintiff's physical RFC on June 14, 2006. (Tr. 153-160). She determined that Plaintiff was capable could: 1) occasionally lift and/or carry 50 pounds; 2) frequently lift and/or carry 25 pounds; 3) stand and/or walk (with normal breaks) for a total of about six hours in an eight hour workday; 4) sit (with normal breaks) for a total of about six hours in an eight hour workday; and 5) push and/or pull without any limitations other than as shown for lifting and carrying. (Tr. 154). No postural, visual, communicative, or environmental limitations were noted. (Tr. 155-157). Plaintiff's handling/gross manipulation were described as "limited", otherwise no manipulative limitations were noted. (Tr. 156).

Plaintiff's physical RFC was again assessed on February 20, 2006. (Tr. 162-169). It was determined that Plaintiff could: 1) occasionally lift and/or carry 50 pounds; 2) frequently lift and/or carry 25 pounds; 3) stand and/or walk (with normal breaks) for a total of about six hours in an eight hour workday; 4) sit (with normal breaks) for a total of about six hours in an eight hour workday; and 5) push and/or pull without any limitations other than as shown for lifting and carrying. (Tr. 163). No manipulative, visual, or communicative limitations were noted. (Tr. 165-166). The examining physician opined that Plaintiff could: 1) never climb ladders, rope or scaffolds; 2) occasionally climb ramps and stairs; and 3) frequently stoop, kneel, crouch, and crawl. (Tr. 164). No environmental limitations were noted other than avoiding hazards such as machinery or heights. (Tr. 166).

8

Ms. Johnson examined Plaintiff on January 13, 2006. (Tr. 176). It was noted that Plaintiff "appeared to relax as [the] session continued." (Tr. 176). Plaintiff "reported that she would like to work on her anxiety and stress level." (Tr. 176). On January 25, 2006, Plaintiff stated that "she felt better" and that "her husband had noticed a difference and was responding to her differently." (Tr. 175). According to Ms. Johnson, Plaintiff appeared "determined to make change and decrease her anxiety." (Tr. 175). Ms. Johnson examined Plaintiff again on February 10, 2006. (Tr. 174). During this examination, Plaintiff was in good spirits. (Tr. 174). Specifically, Plaintiff "reported a general feeling of less stress and stated that she feels that she is coping with things better." (Tr. 174). Plaintiff indicated on February 22, 2006 that "she is continuing to feel less stressed." (Tr. 173). Likewise, Ms. Johnson stated that Plaintiff was "continuing to make good progress towards her goal." (Tr. 173). However, on April 27, 2006, Ms. Johnson indicated that Plaintiff "appears to have slipped into her old way of managing her stress." (Tr. 172). She further noted that Plaintiff's "mood was depressed and [Plaintiff] was tearful during most of the session." (Tr. 172). When Plaintiff was examined again on May 3, 2006 she was in better spirits. (Tr. 171). Nonetheless, Ms. Johnson stated that Plaintiff "continues to have difficulty dealing with her current stressors and remains somewhat guarded." (Tr. 171). Finally, on May 17, 2006 Ms. Johnson stated that Plaintiff was again "in good spirits." (Tr. 170). Similarly, she indicated that Plaintiff had "been successful at handling her stress better in the past few weeks and has increased her socialization with family and friends." (Tr. 170).

On April 3, 2006, Plaintiff was examined by Jill Fernandez, a physical therapist. (Tr.

9

196). At that time, Plaintiff complained of bilateral hand pain, cramping and a "tingling sensation." (Tr. 196). Plaintiff indicated that these symptoms worsened with house work activities such as cooking and cleaning. (Tr. 196). Based on these symptoms, Ms. Fernandez referred Plaintiff for occupational therapy. (Tr. 196). During an April 11, 2006 therapy session, Plaintiff stated that her symptoms were "getting better." (Tr. 190). Her therapist indicated that Plaintiff tolerated the treatment well with decreased pain and increased functional activity. (Tr. 190). During therapy sessions conducted on April 13, 16, 19, 24, & 27, 2006 Plaintiff: 1) had no additional complaints; 2) tolerated her treatment well; and 3) had decreased pain. (Tr. 185-189). On May 2, 2006, Plaintiff stated "[m]y hands hurt only when I do a lot." (Tr. 184). Nonetheless, the therapist stated that Plaintiff had "made good progress in therapy", and that she "expected [Plaintiff] to excel in home environment if she continues proper body mechanics . . .[and] rest." (Tr. 182-184).

Plaintiff was examined by Dr. Joel Rapchik on February 16, 2006. (Tr. 200-201). Plaintiff noted that she drinks three to five beers every other day and she was noted to have alcohol on her breath during this visit. (Tr. 200). Upon examination Plaintiff's : 1) lungs were clear to percussion and auscultation; and 2) manual dexterity was intact. (Tr. 200). She also had full range of motion with no evidence of effusions or paravertetebral muscle spasm. (Tr. 201). In addition, Plaintiff was able to get on and off the examination table without significant difficulty. (Tr. 201). Likewise, she also ambulated normally. (Tr. 201). Ultimately, Dr. Rapchik summarized that Plaintiff was "an uncooperative, probably inebriated, 55 year old woman with Hypertension and arthralgias by history and a cardiac

murmur of unknown significance on examination." (Tr. 201).

On June 3, 2004, Plaintiff was examined by a physician at Vance Family Medicine in Henderson, North Carolina. (Tr. 258). She was described as a "[h]ealthy appearing individual in no distress." (Tr. 258). Likewise, on July 26, 2004 it was observed that Plaintiff was "doing well." (Tr. 245). In addition, Plaintiff stated that she was "feeling well" on August 26, 2004. (Tr. 243). Dr. Daphne Cates again described Plaintiff as a "[h]ealthy appearing individual in no distress" who was "[d]oing well" on September 23, 2004, October 4, 2004, and November 23, 2004. (Tr. 235-240). In February 2005, Plaintiff complained of having some occasional hand cramping when doing chores. (Tr. 233). Examination revealed no extremity edema. Likewise, her upper extremities had no misalignment or tenderness, full range of motion, as well as normal stability, strength and tone. Plaintiff was diagnosed with carpal tunnel syndrome and provided with a right wrist splint. (Tr. 233). When seen for followup of her hypertension, Plaintiff reported doing well except for feeling fatigued. (Tr. 228). She was noted to be healthy appearing and in no distress. Furthermore, Plaintiff had no extremity edema. (Tr. 229). In July 2005, Plaintiff complained of feeling tired when doing housework (Tr.221). Examination revealed: 1) no extremity edema; 2) no extremity misalignment or tenderness; 3) full range of motion; 4) normal stability, strength and tone; and 5) a normal gait (Tr. 222). Tests were ordered which revealed she was hyponatremic, but rheumatic polymyalgia was ruled out (Tr. 217, 222). Another examination on August 9, 2005 revealed Plaintiff had : 1) no edema in her extremities; 2) no misalignment or tenderness; 3) a full range of motion; 4) normal stability, strength and tone;

11

5) no trigger point tenderness; and 6) a normal gait (Tr. 218). Plaintiff's blood pressure medication was changed to Norvasc, she was given Ambien to help her sleep, and more tests were ordered (Tr. 217-18). On August 16, 2005, Plaintiff complained that for three days her feet and ankles were swelling. Examination indicated that her ankles were diffusely swollen and tender. (Tr. 211-12). Plaintiff was prescribed pain medication and instructed to return in one week, although there is no record that she did so. (Tr. 212).

A physician stated on June 30, 1997 that Plaintiff could return to work. (Tr. 264). The only restriction noted was that Plaintiff needed to keep her right thumb bandaged and out of water. (Tr. 264).

Plaintiff testified during the hearing in this matter. She stated that she still had a driver's license, although she drove infrequently. (Tr. 280). On a typical day Plaintiff completes various chores around the house, such as: 1) washing clothes; 2) cooking; and 3) making her bed. (Tr. 282). While performing these chores, however, she indicated that her "hands will give out on" her. (Tr. 282). When she is not completing these chores, she watches television. (Tr. 282). She also noted that she occasionally went out to the movies or to dinner. (Tr. 283). Plaintiff also goes to church approximately every other month. (Tr. 283-284). However, Plaintiff testified that she "relaxed"for significant portions each day "[b]ecause . . . if I start doing something, my legs and my feet will cramp up." (Tr. 284). Specifically, Plaintiff noted that her most significant health problem was that her hands, legs and feet "cramp up completely." (Tr. 284). She also experiences swelling in her hands, legs and feet. (Tr. 284-286). According to Plaintiff, she has been diagnosed by her doctors with

12

carpal tunnel syndrome. (Tr. 285). Because of this condition, Plaintiff asserted that she was provided splints for both hands, which she wears every other day. (Tr. 285-286). Furthermore, Plaintiff testified that her doctors diagnosed her with arthritis. (Tr. 286). Notably, Plaintiff stated that taking her blood pressure medicine would cause the swelling to go down. (Tr. 287). Plaintiff also indicated that she suffers from depression. (Tr. 287). However, Plaintiff noted that she was no longer being treated for this condition. (Tr. 287). Furthermore, Plaintiff conceded that she continued to drink alcohol despite the fact that she had been advised not to. (Tr. 288).

The ALJ made the following findings with regard to Plaintiff's credibility:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms. However, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.
>
> The claimant's carpal tunnel syndrome was responsive to occupational therapy. Her pain and loss of sensation had improved with one month of therapy. She has not required surgery for this condition. Physician examinations reveal that she does not have signs of persistent inflammation and she has no neurological deficits related to this condition. The claimant has complaints of arthralgias, primarily of the feet and ankles. However, she does not have any limitation of motion of the joints and she does not have any deformity or signs of joint inflammation. The claimant has not suffered any weight loss, anemia, or other complications related to her diverticulosis. Her hypertension has been well-controlled with treatment and she has not developed any complications from this condition. The claimant does not have any significant mental status abnormalities related to her affective disorder. She responded rapidly to mental health treatment and reported improvement in her symptoms and functional abilities. In addition, the medical evidence and observations by the Administrative Law Judge do not reveal any evidence of a change in motor tone or bulk such as disuse atrophy, or other changes in

13

body habitus or constitutional appearance such as weight loss, which might be expected in a person whose activities are markedly restricted due to a debilitating disease process. These factors indicated that the claimant's allegations of functional restrictions are not fully credible.
(Tr. 18-19).

Furthermore, the ALJ made the following findings with regard to whether Plaintiff's impairments met or medically equaled one of the listed impairments:

> The claimant has not required continuing surgical management of the carpal tunnel syndrome as required for this condition to meet the relevant criteria in Listing 1.08. The claimant's arthralgias have not resulted in an inability to ambulate effectively as required for this condition to meet the criteria in Listing 1.02A. The claimant's diverticulosis has not resulted in obstruction of stenotic areas, anemia, decreased serum albumin, persistent tenderness of an abdominal mass, perineal disease, involuntary weight loss, or need for supplemental nutrition and she has not suffered weight loss as required for this condition to meet the relevant criteria in Listing 5.06 (with reference to Listing 5.08). The claimant's hypertension had not resulted in any of the complications described in Listings 4.02, 4.04, 2.02-2.04, 6.02, or 11.04.

> The claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of Listings 12.04 or 12.09. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining, concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration . . .

> In activities of daily living, the claimant has mild restriction. In social functioning , the claimant has moderate difficulties. With regard to concentration, persistence or pace, the claimant has moderate difficulties. As for episodes of decompensation, the claimant has experienced no episodes of decompensation. Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the "paragraph B" criteria are not satisfied.

> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the

"paragraph C" criteria. The record does not establish a residual disease process resulting in marginal adjustment, inability to function outside a highly supportive living arrangement, or complete inability to function dependently outside the home.

The claimant's conditions are not manifested by other clinical findings indicating a level of severity comparable to the criteria of the relevant Listings, and therefore, her conditions can not be found to medically equal the criteria of the Listing of Impairments . . .
(Tr. 14-15).

Finally, the ALJ made the following findings regarding Plaintiff's RFC:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium, unskilled work . . .

The claimant can lift and carry 50 pounds occasionally and 25 pounds frequently. She can stand and walk for a total of about 6 hours in an 8-hour day with normal breaks. She can sit for a total of about 6 hours in an 8-hour day with normal breaks. She can perform tasks requiring reaching and handling frequently but not constantly. She should avoid concentrated exposure to workplace hazards. She has a decreased ability to concentrate on and attend to work tasks to the extent that she can perform only simple, routine, repetitive tasks not involving fast-paced or high-volume work. She can interact frequently with coworkers and supervisors and can interact occasionally with members of the public. She can adapt to routine changes in the job setting.
(Tr. 16).

A VE also testified during the hearing in this matter (Tr. 289-292). He stated that a person with Plaintiff's RFC could still perform the following jobs: 1) hospital cleaner; 2) day worker; and 3) linen room attendant. (Tr. 290-292) These positions exist in significant numbers in the national economy. (Tr. 290-292). Based on this testimony, the ALJ concluded that Plaintiff had not been under a disability through the date of his decision. (Tr.

21).

The Court hereby finds that there was substantial evidence to support each of the ALJ's conclusions. Moreover, the ALJ properly considered all relevant evidence, including the evidence favorable to Plaintiff, weighed conflicting evidence, and fully explained the factual basis for his resolutions of conflicts in the evidence. Although Plaintiff lists several assignments of error, these assignments essentially contend that the ALJ improperly weighed the evidence before him. However, this Court must uphold Defendant's final decision if it is supported by substantial evidence. Although Plaintiff may disagree with the determinations made by the ALJ after weighing the relevant factors, the role of this Court is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. Craig, 76 F.3d at 589. Because that is what Plaintiff requests this Court do, her assignments of error are meritless. Nonetheless, the undersigned shall address Plaintiff's individual assignments of error.

**The ALJ properly assessed Plaintiff's credibility**

Plaintiff assigns error to the ALJ's determination regarding the credibility of Plaintiff's testimony. The ALJ's findings with regard to Plaintiff's subjective complaints have already been summarized. "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The ALJ's findings of fact demonstrate that the ALJ gave proper weight to all of Plaintiff's limitations and impairments in assessing Plaintiff's credibility. Likewise, the

16

ALJ's citations to Plaintiff's medical records constitute substantial evidence which support his assessment. Accordingly, this assignment of error is meritless.

**The ALJ properly assessed the opinions of Plaintiff's treatment providers**

Plaintiff contends that the ALJ inappropriately disregarded the opinions of Plaintiff's treating physicians. It is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. Wireman v. Barnhart, 2006 WL 2565245 (Slip Op. at 8)(W.D.Va. 2006)(internal citations omitted). Furthermore, "while an ALJ may not reject medical evidence for no reason or the wrong reason . . .an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings." *Id.* (internal citations omitted).

While "the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992) (per curiam). Rather, "a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro, 270 F.3d at 178. Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. In sum, "an ALJ's determination as to the weight to be assigned to a medical opinion will generally not

be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion." Koonce v. Apfel, 166 F.3d 1209 (4th Cir.1999) (unpublished opinion)(internal citations omitted).

In his decision, the ALJ fully explained his reasoning in weighing the medical evidence. These reasons were supported by substantial evidence and, therefore, this assignment of error is also meritless.

**The ALJ properly assessed Plaintiff's RFC**

Plaintiff argues that there was not substantial evidence to support the ALJ's finding regarding Plaintiff's RFC. More specifically, Plaintiff contends that the ALJ failed to indicate how frequently she could perform fingering activities, and failed to explain how he reached his RFC conclusions. Plaintiff's allegations are without merit.

An individual's RFC is what that person can still do despite physical and mental impairments. 20 C.F.R. §§ 404.1545, 416.945(a). RFC is determined at the fourth step of the sequential evaluation process. Once again, the argument supporting this assignment of error consists primarily of highlighting evidence the ALJ allegedly "failed" to consider. Because there is substantial evidence in the record to support the ALJ's RFC determination, this assignment of error is without merit.

**The ALJ properly developed the administrative record**

Plaintiff contends that the ALJ, aware that May 2006 was the date of the last medical evidence document in the record, should have obtained more current records or ordered a

consultative examination to determine her current state of health (Tr. 277; Plaintiff's Memorandum at 10). The ALJ does have a duty to develop the record. Cook v. Heckler, 783 F.2d 1168, 1173 (4thCir. 1986)(Commissioner has duty to explore all relevant facts and inquire into issues necessary for adequate development of the record). However a plaintiff still has the responsibility to provide medical evidence supportive of her claim. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Pass v. Chater, 65 F.3d 1200,1203 (4th Cir. 1995); and 20 C.F.R. §§ 404.1512(a) and 404.1512(c).

At her hearing Plaintiff submitted a record of medications and also provided duplicates of medical source statements that had been submitted previously. (Tr. 277). The ALJ, noting that the most recent medical record was dated in May 2006, inquired about more current treatment. (Tr. 277). The ALJ was advised that Plaintiff was being treated at Vance Family Medical and their records had been requested about seven weeks ago (Tr. 277-78). The ALJ was further advised that Vance Family Medical had been spoken to the previous day and they had promised to send the records to plaintiff's counsel. The ALJ, seeking verification, asked "[t]hey're getting right to that then," and was told,"[y]eah." (Tr. 278). At the conclusion of the hearing the ALJ asked how much time was needed, stating he wanted to see the additional records. (Tr. 293). The ALJ was assured that the records should be received any day, and was advised that twenty days would be sufficient. (Tr. 293). After no additional records were submitted, the ALJ issued his decision on May 29, 2008, forty-two days after the date of the hearing. (Tr. 21, 293).

Although Plaintiff had not submitted any additional records, she did not complain at

19

any time in the more than forty days the decision was pending that Vance Family Medical had failed to  provide needed records, and she did not ask for the records to be subpoenaed or for some other assistance. Moreover, although Plaintiff made some general contentions of error in her June 11, 2008 request for review of the ALJ's decision, she did not allege that the decision had been made on an incomplete record, and did not request assistance in obtaining additional records.  (Tr. 6, 270). Indeed, even after the Appeals Council advised Plaintiff that more evidence could be submitted (Tr. 7), Plaintiff did not submit additional records and did not request assistance to obtain additional records.

At her hearing Plaintiff testified at length about her impairments and their limiting effects (Tr. 281-89). In regards to the treatment she was then receiving, plaintiff testified that her doctors had not taken any x-rays lately, but had done blood tests, and she'd had an EKG in February to monitor a heart murmur (Tr. 285, 286, 288). Plaintiff further testified that, in regards to the EKG results, her doctor had told her everything was alright (Tr. 289). Plaintiff also testified that she had been given splints for carpel tunnel syndrome which she wore at night and every other day.  She further testified that she was being given generic Mobic  for arthritis pain, and took blood pressure medication that helped with swelling in her legs and feet.    (Tr.  286-287).    See Gross v. Heckler, 785 F.2d 1163, 1165-66 (4th Cir. 1986)(symptoms controlled by medication or treatment are not disabling). With regard to her depression, Plaintiff testified that her last appointment with Ms. Johnson had been in June of the previous year (Tr. 287).  Ultimately, Plaintiff indicated that the only restriction her doctors had given her was not to drink–a restriction which she violated.  (Tr. 287-88).

Plaintiff's testimony regarding her ongoing treatment and lack of doctor imposed restrictions demonstrated that her complaints had continued to be treated in a manner that was consistent with the treatment already documented in the record. Thus, Plaintiff, through her own testimony, afforded the ALJ with sufficient information about her treatment and then current state of health from which he could make a decision regarding disability. Accordingly, Plaintiff's final assignment of error is meritless.

## Conclusion

For the aforementioned reasons, Plaintiff's Motion for Judgment on the Pleadings (DE-17) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-22) be GRANTED, and that the final decision by Defendant be AFFIRMED

SO RECOMMENDED in Chambers at Raleigh, North Carolina this 21st day of August, 2009.

_____
William A. Webb
U.S. Magistrate Judge